PER CURIAM.
Valeria Frye Walker appeals from a judgment entered by the Jefferson Circuit Court (“the trial court”) finding Walker in direct criminal contempt of court during her representation of Lashundra Lewis Fowler (“the plaintiff’) in a domestic-relations case that was pending before the trial court. We reverse the finding of contempt.
On March 9, 2012, a hearing was held before the trial court in the underlying domestic-relations case regarding a motion filed by Walker requesting that Judge Dorothea Batiste recuse herself and a motion filed by Eddie Fowler II (“the defendant”) to disqualify Walker from representing the plaintiff because the defendant’s counsel was representing Walker in a separate pending legal action. At that hearing, the defendant’s counsel stated, among other things, that she had consulted with Walker regarding the domestic-relations case at issue before Walker began representing the plaintiff and that that, among other things, created a conflict justifying Walker’s disqualification. In arguing the motion to disqualify, the defendant’s counsel asserted that Walker had threatened to subpoena her. At that time, Walker objected, citing hearsay as the ground for the objection. The trial court overruled the objection, holding that the statement was not hearsay. Walker continued to protest and object, and, upon the trial court’s continued overruling of the objection, Walker stated: “Exception.” The trial court warned Walker that it would not argue with Walker, that it would not “tolerate what’s happened in the past,” and that Walker “will respect this Court.” The trial court instructed the defendant’s attorney to proceed, at which time Walker again stated: “Exception.” Walker purported to explain the purpose of that statement, but, at that time, the trial court *1289 ordered that Walker be taken into custody. After a recess, Walker was returned to the courtroom and the hearing resumed with the defendant’s counsel continuing her argument regarding the motion to disqualify. Once the defendant’s counsel had concluded her argument, the trial court signaled for Walker to respond. Despite the direction to simply respond to the defendant’s counsel’s argument on the pending motions, Walker attempted several times to note on the record that she had been locked up in a holding cell. When Walker continued to attempt to state on the record that she had been locked up in a holding cell, the trial court ended the proceedings for the day because, it said, Walker was not “[r]espond[ing] to [defense counsel’s] oral arguments.”
On March 12, 2012, the hearing continued and the following exchange occurred:
“[The trial court]: Okay. Very well. Ms. Walker, your response to the Motion to Disqualify.
“[Walker]: You hadn’t already ruled on that, Judge?
“[The trial court]: No.
“[Walker]: Did you rule on something? Can I get a — the order of the record — you had already ruled on something, am I correct?
“[The trial court]: Ms. Walker, your motion — the Motion to Disqualify is on the table, so you need to respond to—
“[Walker]: I’m just trying to remember where we were.
“[The trial court]: Your response to the Motion to Disqualify.
“(At which time there was a brief pause.)
“[Walker]: Okay. I don’t quite remember exactly where we were, but in looking at this court report here, I was going to say—
“[The trial court]: No, you are to respond to the Motion to Disqualify, Counsel. Just respond to the Motion to Disqualify, Counsel.
“[Walker]: I understand what you’re saying, Your Honor, but with all due respect—
“[The trial court]: Counsel, respond to the motion—
“[Walker]: — I am trying to get a feel for where I am in my response [to] the motion.
“[The trial court]: You never said a word, Ms. Walker. Respond to the Motion to Disqualify.
“[Walker]: And that’s what I’m trying to get—
“[The trial court]: You’re not going to argue with me. Just respond to the Motion to Disqualify. You have the record. I have it here in front of me. Just respond to the Motion to Disqualify, Counsel.”
At that time, Walker began to respond to the arguments made by the defendant’s counsel regarding the motion to disqualify. After a lengthy response, Walker continued and the following exchange occurred:
“[Walker]: The issue about the [pen-dente lite] agreement — the client, the other attorney and [the defendant’s attorney] met with you in your chambers. They came back to my client and said what you were going to do. That’s when she had no other choice but to agree.
‘You had already said how you were going to rule. You had already said the children were going to be going—
“[The trial court]: Were you here, Ms. Walker?
“[Walker]: I can only go—
“[The trial court]: Were you here? Were you here, Ms. Walker? Were you here?
*1290 “[Walker]: You know, Your Honor, I was not.
“[The trial court]: You were not here.
“[Walker]: I was not here.
“[The trial court]: State why you should not be disqualified, why you should not be disqualified.
“[Walker]: Because attorneys — they differ in — the attorneys — I have a case right now that I’m on, Your Honor, there’s been five attorneys in it. Five. You think that because I’m not here I should be disqualified? I wasn’t on the case?
“[The trial court]: Are you—
“[Walker]: Is that what you’re asking me?
“[The trial court]: Ms. Walker, you do not get to question the Court.
“[Walker]: No, I’m asking — I’m trying to—
“[The trial court]: No, no, no, you do not—
“[Walker]: — understand what you’re asking—
“[The trial court]: No, you fail to understand the order of this Court. Now, I have instructed you and said state why you should not be disqualified. I am not going to argue with you, Ms. Walker.
“[Walker]: You just asked me a question.
“[The trial court]: I said state why you should not be disqualified. ‘State’ is simple. I am not going to argue with you today, Ms. Walker.
“[Walker]: No. I just want to repeat — and I want — you know, it’s not about arguments. That’s what I do; that’s my job, is arguing.
“[The trial court]: Okay. All right. This ends—
“[Walker]: That’s what—
“[The trial court]: You are found in contempt. You are disorderly. You have repeatedly been disrespectful to this Court. I instructed you—
“[Walker]: How?
“[The trial court]: I instructed you last Friday. You have come into my chambers, and you have yelled at me with other counsel present and my staff. I’m not going to argue with you, Ms. Walker.
‘You are hereby found in direct contempt. You are to surrender yourself to the Jefferson County Jail, where you will sit for five days. I’m not going to argue with you anymore. I’m not going to argue with you anymore.
“That’s it. Court is adjourned. Thank you very much.”
The trial court entered an order finding Walker in contempt for her “willful failure to comply with the provisions of previous orders” of the trial court; that order cited the events of March 9 and March 12, 2012, noting the objections and exceptions made by Walker and Walker’s attempt to instruct the trial court. The order also indicated that Walker had attempted to retry a settled pendente lite relief order without having filed a motion to reconsider that order; that Walker “had been disrespectful to the Court on November 4, 2011, when she yelled at the Court in [its] Chambers”; that Walker had misstated the Court’s record; and that Walker’s behavior had been disorderly and insolent. The trial court held Walker in criminal contempt for her behavior, sentenced her to five days’ imprisonment in the Jefferson County Jail, and retained jurisdiction of the proceeding “for any further appropriate orders.”
On the same date that Walker was arrested pursuant to the trial court’s contempt order, the presiding circuit judge for the civil division of the Jefferson Circuit *1291 Court filed an order directing the sheriff to release Walker from custody upon her posting a cash bond in the amount of $100; that bond was contingent upon Walker’s appearing in the court to which her appeal might be prosecuted and her agreement to abide by the result of such appeal. Walker filed a notice of appeal to this court on March 21, 2012.
“[T]he standard of review in an appeal from an adjudication of criminal contempt occurring in a civil case is whether the offense, i.e., the contempt, was proved beyond a reasonable doubt. Hicks v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); Combs v. Ryan’s Coal Co., 785 F.2d 970 (11th Cir.1986); and United States v. Turner, 812 F.2d 1552 (11th Cir.1987) (an attorney was found guilty of criminal contempt by United States District Judge Brevard Hand).”
Ex parte Ferguson, 819 So.2d 626, 629 (Ala.2001).
We agree with Walker that the issue to be decided on appeal is whether Walker’s actions amounted to direct criminal contempt of court. See Ala.Code 1975, § 12-1-11 (explaining that the question on appeal by an attorney who is punished for a contempt in the circuit court is whether the attorney was guilty of contempt). Rule 70A(a)(2)(A), Ala. R. Civ. P., defines “direct contempt” as
“disorderly or insolent behavior or other misconduct committed in open court, in the presence of the judge, that disturbs the court’s business, where all of the essential elements of the misconduct occur in the presence of the court and are actually observed by the court, and where immediate action is essential to prevent diminution of the court’s dignity and authority before the public.”
Rule 70A(a)(2)(C), Ala. R. Civ. P., defines “criminal contempt” as either:
“(i) Misconduct of any person that obstructs the administration of justice and that is committed either in the court’s presence or so near thereto as to interrupt, disturb, or hinder its proceedings, or
“(ii) Willful disobedience or resistance of any person to a court’s lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor.”
In Hawthorne v. State, 611 So.2d 436 (Ala.Crim.App.1992), an attorney was held in direct criminal contempt for his use of the phrase “sons of bitches” during closing arguments. The Alabama Court of Criminal Appeals noted that, “[wjhile the language used was unprofessional, indecorous, unnecessary, and unbecoming of a member of the bar, the record is devoid of any evidence that ‘immediate action [was] essential to prevent diminution of the court’s dignity and authority before the public.’” Id. at 437 (quoting Rule 33.1, Ala. R.Crim. P., which is identical in all material respects to Rule 70A(a), Ala. R. Civ. P.). In In re Powers, 523 So.2d 1079 (Ala.Civ.App.1988), an attorney was held in contempt after continuing to object despite the court’s advising him that he had a continuing objection and ruling and that he would be held in contempt if he continued to object. This court stated:
“While his action constituted an error in judgment in this respect, it did not rise to the level of contemptuous conduct. An error in judgment without clear and convincing evidence of bad faith intent is insufficient for a finding of contempt. In re Carter, 412 So.2d 811 (Ala.Civ.App.1982). The record does not reveal that the attorney had such bad faith in this ease.”
523 So.2d at 1082.
In the present case, Walker’s actions at the hearing on March 9, 2012, *1292 were similar to those by the attorney in Powers, which this court determined did not rise to the level of direct criminal contempt. Walker’s apparent argumentativeness with the trial court on March 12, 2012, appears from the transcript to be in an attempt to respond to the trial court’s requests, and the record does not reveal that Walker acted in bad faith on that occasion. Accordingly, we conclude that Walker’s actions at the hearings on March 9 and 12, 2012, did not amount to direct criminal contempt. With regard to the trial court’s reference to what had occurred in its chambers on November 11, 2012, we note that the passage of four months between the incident and the entry of the contempt order indicates that the actions were not such that immediate action was required. Thus, with regard to that incident, the trial court failed to comply with Rule 70A(b)(2) and (3), Ala. R. Civ. P., which require the court to allow Walker an opportunity to present any mitigating circumstances and that the court pronounce the sentence for the contempt within seven days of the offense.
Based on the foregoing, we conclude that the trial court erred in holding Walker in direct criminal contempt of court. The adjudication of contempt against Walker is reversed, and the cause is remanded for the trial court to dismiss the criminal-contempt charge against Walker.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN and DONALDSON, JJ., concur.
THOMPSON, P.J., and MOORE, J., concur in the result, without writings.
THOMAS, J., recuses herself.